**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOCKETED
NOV 0 2 2004

FRENI BREMBO, S.p.A.          )
and                          )
BREMBO NORTH AMERICA, INC.   )     Civil Action No. 04C 521 7
    Plaintiffs,           )
                          )     Judge Kennelly
v.                           )     Magistrate Judge Bobrick
ALCON COMPONENTS, LTD.       )
and                          )
ALCON COMPONENTS (USA) INC.  )
    Defendants             )

FILED
OCT 25 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**NOTICE OF MOTION**

to:     William H. Frankel, Esq.
        Michael P. Chu, Esq.
        Amanda M. Church, Esq.
        Brinks, Hofer, Gilson & Lione
        3600 NBC Tower
        455 N. Cityfront Plaza Drive
        Chicago IL  60611-5599

**PLEASE TAKE NOTICE** that on October 28, 2004 at 9:30 a.m. or as soon thereafter as counsel may be heard, the undersigned will appear before the **Honorable Judge Matthew F. Kennelly,** or any judge sitting in his stead, in **Courtroom 2103** of the United States District Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn Street, Chicago, Illinois 60604, and present **Defendants' Motion for Summary Judgment for Non-Infringement**, a copy of which is hereby served upon you.

FRENI BREMBO, S.p.A. and
BREMBO NORTH AMERICA, INC.

By: _____
        One of its attorneys

Thomas J. Donovan
Vladimir Khodosh
BARNES & THORNBURG, LLP
Suite 4400
One North Wacker Drive
Chicago IL  60606-2809
Telephone: 312.214.8329
Facsimile: 312.759.5646

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following:

William H. Frankel, Esq.
Michael P. Chu, Esq.
Amanda M. Church, Esq.
Brinks, Hofer, Gilson & Lione
3600 NBC Tower
455 N. Cityfront Plaza Drive
Chicago IL  60611-5599

via hand delivery this 25th day of October, 2004.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DOCKETED**

NOV 0 2 2004

| | | |
|---|---|---|
| FRENI BREMBO, S.p.A. | ) | |
| and | ) | |
| BREMBO NORTH AMERICA, INC. | ) | Civil Action No. 04C 5217 |
| Plaintiffs, | ) | |
| v. | ) | Judge Kennelly |
| ALCON COMPONENTS, LTD. | ) | Magistrate Judge Bobrick |
| and | ) | |
| ALCON COMPONENTS (USA) INC. | ) | |
| Defendants | ) | |

**DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Alcon Components, Ltd. and Alcon Components (USA) Inc. (collectively "Defendant") request that this Court grant summary judgment that the product accused of infringement in Paragraph 15 of the  "Complaint for Patent Infringement" (the "accused product"), filed by Freni Brembo, S.p.A. and Brembo North America, Inc. (collectively "Plaintiff"), does not infringe U.S. Patent 6,446,766 ("the '766 patent").

The grounds for the Motion are that the accused product does not include:

- a duct extending between an inlet opening, and at least one outlet opening *facing at least one radiator element*, as called for by independent claims 1, 9 and 23; or

- a duct extending between an inlet opening, and at least one outlet opening *facing a pressure means* as called for by independent claim 15.

As explained in the accompanying filings, this claim language, as a matter of law, requires a duct having an outlet opening opposite the structure of the radiator element or piston. Such structure

8

is not at all present in the accused product and, therefore, the accused product does not infringe any of the claims of the '766 patent.

In support of its Motion, Defendant submits the accompanying: (1) Memorandum In Support Of Defendants' Motion For Summary Judgment Of Non-Infringement, (2) Defendants' Statement Of Undisputed Material Facts, and (3) Appendix of Evidentiary Materials In Support Of Defendants' Motion For Summary Judgment. For the reasons set forth therein, Defendant is entitled to summary judgment of non-infringement of U.S. Patent No. 6,446,766.

Date:  October 25, 2004

Respectfully Submitted,

Defendants Alcon Components, Ltd. and Alcon Components (USA) Inc.

Thomas J. Donovan
Vladimir Khodosh
BARNES & THORNBURG LLP
One North Wacker, Suite 4400
Chicago, Illinois 60606
(312) 214-8329
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following:

William H. Frankel, Esq.
Michael P. Chu, Esq.
Amanda M. Church, Esq.
Brinks, Hofer, Gilson & Lione
3600 NBC Tower
455 N. Cityfront Plaza Drive
Chicago IL  60611-5599

via hand delivery this 25th day of October, 2004.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FRENI BREMBO, S.p.A.                )

and                                 )

BREMBO NORTH AMERICA, INC.          )        Civil Action No. 04C 5217

    Plaintiffs,                     )

v.                                  )        Judge Kennelly

ALCON COMPONENTS, LTD.              )        Magistrate Judge Bobrick

and                                 )

ALCON COMPONENTS (USA) INC.         )

    Defendants                      )

**DOCKETED**

NOV 0 2 2004

FILED

OCT 2 5 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants Alcon Components, Ltd. and Alcon Components (USA) Inc. submit the following statement of undisputed material facts in support of their Motion for Summary Judgment. There is no genuine issue as to any of the following facts, which entitles Defendants to a judgment as a matter of law:

I.   **The Parties And Jurisdiction**

    1.   Plaintiff Freni Brembo, S.p.A. is an Italian company incorporated under the Law of Italy with a principal place of business at Via Brembo 25, 24035 Curno, Italy (Ex. A; ¶ 3).

    2.   Plaintiff Brembo North America, Inc. is a Delaware Corporation with its principal place of business at 1585 Sunflower Avenue, Costa Mesa, CA 92626-1532, and is a wholly owned subsidiary of Freni Brembo, S.p.A. (Ex. A; ¶ 4).

3.      Defendant Alcon Components, Ltd. is a United Kingdom corporation. Defendant Alcon Components (USA) Inc. is a Delaware corporation. (Ex. A; ¶ 2).

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338 and 35 U.S.C. §281. (Ex. A; ¶ 7).

5.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b). (Ex. A; ¶ 7).

**II.    Patent in Suit**

6.      Plaintiffs allege in their Complaint For Patent Infringement that the product described in Paragraph 15 of Plaintiffs' Complaint (hereinafter the "accused product") infringes the U.S. Pat. No. 6,446,766 (hereinafter the "'766 patent") (Ex. B).

7.      The '766 patent contains 24 claims including four independent claims, namely, claims 1, 9, 15 and 23. (Ex. B).

8.      Independent claim 1 of the '766 patent reads as follows: (Ex. B)

1. A disk brake comprising:

a caliper body, in which a hub-side elongate element, a wheel-side elongate element and connecting bridges extending astride a disk constitute a single part;

pressure means housed in the elongate elements and acting on respective pads by means of radiator elements;

a duct for the passage of cooling air;

said duct formed inside the caliper body and extending between an inlet opening, and at least one outlet opening reaching into the immediate vicinity and directly facing at least one radiator element of the radiator elements; and

a cooling-air feed pipe coupled to said duct for supplying air from an air-intake of a motor vehicle.

9.    Independent claim 9 of the '766 patent reads as follows: (Ex. B)

9. A disk brake comprising:

a caliper body, in which a hub-side elongate element, a wheel-side elongate element and connecting bridges extending astride a disk constitute a single part;

pressure means housed in the elongate elements and acting on respective pads by means of radiator elements;

a duct for the passage of cooling air, formed inside the caliper body and extending between an inlet opening, and at least one outlet opening facing at least one radiator element of the radiator elements, wherein said bridges comprise a central bridge and two end bridges, said duct formed inside the central bridge.

10.   Independent claim 15 of the '766 patent reads as follows: (Ex. B)

15. A disk brake comprising:

a caliper body, in which a hub-side elongate element, a wheel-side elongate element and connecting bridges extending astride a disk constitute a single part;

pressure means housed in the elongate elements a portion of said pressure means acting on respective pads;

a duct for the passage of cooling air;

said duct formed inside the caliper body and extending between an inlet opening, and at least one outlet opening reaching into the immediate vicinity and directly facing said pressure means; and

a cooling-air feed pipe coupled to said duct for supplying air from an air intake of a motor vehicle.

11.   Independent claim 23 of the '766 patent reads as follows: (Ex. B)

23. A disk brake comprising:

a caliper body, in which a hub-side elongate element, a wheel-side elongate element and connecting bridges extending astride a disk constitute a single part;

pressure means housed in the elongate elements and acting on respective pads by means of radiator elements, wherein the pressure means comprise three pistons for each elongate element,

each piston having a respective radiator element, and in that each outlet opening comprises a diffuse body having three outlets in a fan-like arrangement; and

a duct for the passage of cooling air, formed inside the caliper body and extending between an inlet opening, and at least one outlet opening facing at least one radiator element of the radiator elements, wherein said bridges comprise two end bridges, said duct formed inside the end bridges.

12.    Under BRIEF DESCRIPTION OF THE DRAWINGS section, the '766

specification (col. 1, lns. 50-58) includes the following language: (Ex. B)

FIG. 1 is an elevational view of a disk brake according to the invention, sectioned on the line I--I,

FIG. 2 shows a detail of the disk brake of FIG. 1, sectioned on the line II--II,

FIG. 3 is a perspective view, taken on the arrow III, showing a detail of the disk brake of FIG. 1, substantially in plan,

FIG. 4 is a perspective view, taken on the arrow IV, showing the detail of FIG. 3, substantially from below,

13.    FIGS. 1 and 2 of the '766 patent appear as follows: (Ex. B)



4

14.    FIGS. 3 and 4 of the '766 patent appear as follows: (Ex. B)



FIG.3                              FIG.4

15.    The "Summary of the Invention" section of the '766 specification reads as

follows: (Ex. B)

### SUMMARY OF THE INVENTION

This problem is solved by a disk brake of the type specified which
is characterized in that it comprises a duct for the passage of
cooling air, formed inside the caliper body and extending between
an inlet opening and at least one outlet opening facing at least one
radiator element of the radiator elements. (col. 1, lns. 36-42).

16.    The '766 specification includes the following language relating to the

"pressure means": (Ex. B)

[T]he pressure means 6 housed in the hub-side elongate element 8 comprise three
hydraulic pistons 13, 14 and 15.

Similarly, the pressure means 7 housed in the wheel-side elongate element 9
comprise three hydraulic pistons 16, 17 and 18

Col. 2, lns. 33-40.

It should be noted that each piston has an active end which is in contact with the
pad. These active ends are formed generally so as to dissipate heat, that is, to
reduce the amount of heat which passes from the pads to the brake fluid.

5

Col. 2, lns. 44-47.

[T]hese active ends, which are called radiator elements, have openings in the form of circular holes, which are indicated in the drawings by reference numerals 13a to 18a each of which relates to a respective one of the pistons 13 to 18.

Col. 2, lns. 48-42.

17.    The '766 specification includes the following language: (Ex. B)

The duct 19 advantageously extends through the central bridge 12 from an end 12a of the duct disposed adjacent the hub-side elongate element 8 and extends between an inlet opening 20 and two outlet openings 21 and 22 disposed at the height of and facing the radiator elements 13a, 14a and 15a and the radiator elements 16a, 17a and 18a, respectively.

Col. 2, lns. 57-63.

18.    The '766 specification includes the following language: (Ex. B)

The outlet openings 21 and 22 preferably comprise respective diffuser bodies 37 and 38 which are substantially fan-shaped and are fixed to the elongate elements. 8 and 9 by means of respective pairs of screws 37a and 38a. These diffuser bodies 37 and 38, which are made of aluminum alloy, have respective inlet openings 39 and 40 for the supply of the cooling air. The diffuser bodies 37 and 38 have, respectively, three outlet openings 13b, 14b and 15b, spread out like a fan and three outlet openings 16b, 17b and 18b also spread out like a fan, all directly facing and close to the respective radiator elements.

Col. 3, lns. 18-28.

19.    The '766 specification includes the following language: (Ex. B)

In operation, the cooling air coming from an air intake of the motor vehicle passes through the pipe 24, reaches and passes through the duct 19 until it reaches the diffuser bodies 37, 38 and the outlet openings. The cooling air emerges from these and passes directly over the radiator elements.

By virtue of the fact that the outlet openings reach into the immediate vicinity of the radiator elements which they face in close proximity, the cooling is highly effective. Col. 3, lns. 44-52.

## III.   PROSECUTION HISTORY OF THE '766 PATENT

20.     As originally filed, claim 1 was initially rejected in an Office Action dated February 2, 2001 under 35 U.S.C §103(a) based on Ross (U. S. Pat. No. 4,440,270) in view of GB 2214581. (Ex. C, p49).

21.     In the Office Action dated February 2, 2001, the Examiner also mentioned Lucien (U. S. Pat. No. 3,664,467), Dowell (U. S. Pat. No. 3,983,974), Weiler (US 5,002,160), and Weiler (U. S. Pat. No. 5,238,090) as pertinent to applicant's disclosures. *Id.* at p50.

22.     Applicant filed a Response To Office Action  on June 25, 2001, wherein the applicant amended claim 1 as follows: (Ex. C, p60)

> 1. A disk brake comprising:
>
> a caliper body, in which a hub-side elongate element, a wheel-side elongate element and connecting bridges extending astride a disk constitute a single part: [,]
>
> pressure means housed in the elongate elements and acting on respective pads by means of radiator elements: [,]
>
> a duct for the passage of cooling air: [,]
>
> said duct formed inside the caliper body and extending between an inlet opening, and at least one outlet opening reaching into the immediate vicinity and directly facing at least one radiator element of the radiator elements.

23.     In the Response To Office Action filed on June 25, 2001, applicant made arguments  intended to distinguish the invention of amended claim 1 over the prior art, including the following arguments: (Ex. C, p64)

> This duct extends between an inlet opening, and at least one outlet opening.  The outlet opening reaches into the immediate vicinity, and directly faces, at least one radiator element.

The cooling chamber in Ross is specifically designed so as to direct the flow of air at the disk itself. *Id.* at p64-65.

Neither Ross, Brembo, or the combination thereof, discloses or suggests in any way, that cooling means be immediately directed at the radiator elements. *Id.* at p64.

Ross does not disclose or suggest to direct the cooling air specifically at the ends of the pressure means. In fact, Ross teaches away from the claimed invention by expressly teaching that cooling air be directed at the disk brake instead of the connecting parts between the hydraulic piston and the friction pads.... *Id.* at p65.

24.    In the Response To Office Action filed on June 25, 2001, applicant made additional arguments intended to distinguish the invention of amended claim 1 over the prior art, including the following arguments: (Ex. C, p65-66)

However, if a combination should be forced, the combined teachings of Ross and Brembo disclose a disk rake housed in a chamber, pistons fitted with radiator elements, and an air conduit which directs cooling air at an acute angle to the brake disk in order to impart airflow along the opposite faces of the disk brake. *Id.* at p65

The combination does not contemplate air cooling that is immediately directed at a radiator element. It is still only an attempt to cool down the very hot and reasonably heat resistant brake disk, which has proven to be effective only for cooling the disk itself. The combination is wholly inefficient with respect to thermal control over the much colder and highly heat sensitive hydraulic fluid. *Id.*

By treating the source of the heat, the combination categorically fails to grasp what the claimed invention recognizes: that the friction pads absorb a smaller quantity of the frictional heat than the brake disk, and that the heat transfer to the pistons must take place through the limited connecting area between the friction pads and the hydraulic pistons.  In contrast to the combination, the claimed invention immediately directs cooling at exactly that critical region, thereby effectively separating the source of the heat from the brake fluid. *Id.* at p66.

8

25.    In a subsequent response of July 24, 2001, applicant repeated its arguments made in the Response to Office Action filed June 25, 2001 (Ex. C, p80-84).

## IV.    Dictionary Definitions of the Term  "facing"

26.    The Cambridge Advanced Learner's Dictionary  defines the term "face" in the verb form as "to turn or be turned towards something physically; to be opposite". Cambridge Advanced Learner's Dictionary (2003) (Ex. D).

27.    The Oxford American College Dictionary definition of the term "facing" as an adjective is defined as "positioned with a front toward a certain direction; opposite".  The term "face" in the verb form means "to be positioned with the face or front toward (someone or something)"; "have the face or front pointing in a specified direction". The Oxford American College Dictionary (2002) (Ex. D).

## V.    The Accused Product

28.    The accused product includes a brake caliper that includes several parts, namely two pairs of brake pistons, two pairs of chimneys, an air inlet duct, a deflector, and a caliper body. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

29.    The pistons are open ended and terminate in castellations. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

30.    Each chimney extends coaxially through a corresponding open-ended piston. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

31.    The caliper body includes two limbs, each of which defines two pairs of bores. Each bore receives one of the open-ended pistons and its coaxial chimney. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

32.    Each limb of the caliper body defines two inwardly facing angled channels. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

33.    The caliper is intended to be disposed about a brake disk surrounded by a pair of brake pads. The brake disk and brake pads are disposed between the limbs of the caliper body. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

34.    The openings of the chimneys and angled channels point at, and thus are opposite, the brake pads. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

35.    The openings of the chimneys and angled channels do not point at, and thus are not opposite, any structure of the pistons. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

36.    In operation, the air is directed or pointed at the brake pads by the two pairs of chimneys and through the angled channels. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

37.     In operation, the air that is exhausted at the brake pads from the chimneys travels inside the piston parallel to the piston before it is pointed or directed at the brake pads. In particular, air travels through chimneys that extend internally of and coaxially to the piston before it is exhausted at the brake pad. (Smith Declaration, ¶¶ 4-14; Ex. 1-3 to Smith Declaration.)

Date:  October 25, 2004

Respectfully Submitted,

Defendants Alcon Components, Ltd.
and Alcon Components (USA) Inc.

Thomas J. Donovan
Vladimir Khodosh
BARNES & THORNBURG LLP
One North Wacker, Suite 4400
Chicago, Illinois 60606
(312) 214-8329
Attorneys for Defendants

CHDS01 TJD 241044v1

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served upon the following:

William H. Frankel, Esq.
Michael P. Chu, Esq.
Amanda M. Church, Esq.
Brinks, Hofer, Gilson & Lione
3600 NBC Tower
455 N. Cityfront Plaza Drive
Chicago IL  60611-5599

via hand delivery this 25th day of October, 2004.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FRENI BREMBO, S.p.A. | ) | |
| and | ) | |
| BREMBO NORTH AMERICA, INC. | ) | Civil Action No. 04C 5217 |
| Plaintiffs, | ) | |
| v. | ) | Judge Kennelly |
| ALCON COMPONENTS, LTD. | ) | Magistrate Judge Bobrick |
| and | ) | |
| ALCON COMPONENTS (USA) INC. | ) | |
| Defendants | ) | |

**DOCKETED**

NOV 0 2 2004

FILED

OCT 2 5 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

# TABLE OF CONTENTS

Introduction .................................................................................................................. 1

Background .................................................................................................................. 1

Applicable Law on Summary Judgment of Patent Non-Infringement ......................... 2

Argument ..................................................................................................................... 4

The Accused Product Does Not Infringe Any Of The Claims Of The '766 Patent
Because It Does Not Include A Duct With An Outlet Opening That Faces
A Radiator Element Or Pressure Means ...................................................................... 4

I.    Claim Interpretation: Independent Claims 1, 9, 15 and 23 Require A Duct
      Having An Opening Opposite The Structure Of The Radiator
      Element Or Piston ............................................................................................. 4

      A.    The Specification Mandates That The Claim Language Means The Outlet
            Opening Is Opposite The Structure Of The Radiator Element Or Piston .... 5

      B.    The Customary Meaning of the Claim Language Mandates The Outlet
            Opening To Be Opposite The Structure Of The Radiator Element Or Piston ... 8

      C.    The Prosecution History Mandates That The Claim Language Means
            The Outlet Opening Is Opposite The Structure Of The Radiator Element
            Or Piston ................................................................................................... 9

II.   Claim Comparison: The Accused Product Does Not Include A Duct Having
      An Outlet Opening Opposite The Structure Of the Radiator Element Or Piston ...... 12

      A.    There Is No Literal Infringement ............................................................. 12

      B.    There Is No Infringement Under The Doctrine Of Equivalents ................ 13

            1.    The Accused Product Functions In A Substantially Different
                  Manner And Obtains A Substantially Different Result ..................... 13

            2.    Prosecution History Estoppel Bars The Application Of The
                  Doctrine Of Equivalents .................................................................. 14

Conclusion    .................................................................................................................. 15

## Introduction

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Alcon Components, Ltd. and Alcon Components (USA) Inc. (collectively "Defendant") request that this Court grant summary judgment that the product accused of infringement in Paragraph 15 of the "Complaint for Patent Infringement" (the "accused product"), filed by Freni Brembo, S.p.A. and Brembo North America, Inc. (collectively "Plaintiff"), does not infringe U.S. Patent 6,446,766 ("the '766 patent").

The grounds for the Motion are that, as explained in more detail below, the accused product does not include:

- a duct extending between an inlet opening, and at least one outlet opening *facing at least one radiator element*, as called for by independent claims 1, 9 and 23; or

- a duct extending between an inlet opening, and at least one outlet opening *facing a pressure means* as called for by independent claim 15.

As a result, as a matter of law, the accused product does not infringe any of the independent claims of the '766 patent and, therefore, does not infringe the '766 patent.

## Background

Plaintiff alleges in its Complaint for Patent Infringement, infringement of the '766 patent is based on Defendant's sales of its "Through Piston Cooled" calipers (the "accused product"). The '766 patent includes 24 claims, claims 1, 9, 15 and 23 of which are independent.

The accused product is in the form of a brake caliper that includes two pairs of brake pistons, two pairs of chimneys, an air inlet duct, a deflector, and a caliper body. Each chimney extends coaxially through one of the pistons, which are open ended. The open-ended pistons terminate in castellations. The caliper body includes two limbs, each of which defines two pairs of bores. Each bore receives one of the pistons and its coaxial chimney. Each limb also defines an inwardly facing angled channel. (Defendant's Statement of Undisputed Material Facts, hereinafter "DSOF", ¶¶ 28-32).

The caliper is intended to be disposed about a brake disk surrounded by a pair of brake pads. The brake disk and brake pads are disposed between the limbs of the caliper body. Each chimney includes an opening that points at one of the brake pads. Each angled channel includes an opening that points at one of the brake pads. In operation, the exhausted air is directed or pointed at the brake pads by the two pairs of chimneys and the angled channels. The air that is

exhausted at the brake pads from the chimneys travels inside the piston parallel to the piston before it is directed or pointed at the brake pads. In particular, air travels through chimneys internally of and coaxially to the piston before it is exhausted at the brake pad. (DSOF, ¶¶ 33-37).

## Applicable Law On Summary Judgment of Patent Non-Infringement

Summary judgment is an appropriate tool for disposing of claims of patent cases, just as it is in any other type of case, where it can be determined that 1) no genuine issues of material fact exist and 2) the moving party is entitled to summary judgment as a matter of law. *See, e.g., Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1274 (Fed. Cir. 1995) (citations omitted); *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994). Because the burden of proof lies with the patentee in a patent infringement lawsuit, "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001). Once the moving party has pointed to an absence of evidence on an issue on which the nonmovant bears the burden of proof, the burden then shifts to the nonmovant to demonstrate that, with due regard to the burden or proof, "'there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986) (citation omitted) (alteration in original).

A non-infringement analysis involves two steps: First, the court determines the scope and meaning of the patent claims asserted; and, second, the properly construed claims are compared to the allegedly infringing product. The first step is a question of law. The second step is a question of fact, which the Court may resolve as the fact finder or as a matter of law where no reasonable jury could find infringement. See *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S. 370 (1996). *Jansen v. Rexall Sundown, Inc.,* 342 F.3d 1329 (Fed. Cir. 2003); *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1573 (Fed. Cir. 1997). The second step involves questions of law, including, for example, the various limitations to the application of the doctrine of equivalents. *Festo v. Shoketsu Kinzoku Kogyo Kabushik Co.,* 344 F.3d 1359, 1367 (Fed. Cir. 2003).

The second step of the infringement analysis requires a determination that every claim limitation or its equivalent can be found in the accused product. *Warner-Jenkinson Co. v. Hilton*

*Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Jansen*, 342 F.3d at 1332. These two types of infringement, namely, literal infringement and infringement under the doctrine of equivalents, are described below.

Literal infringement exists if each of the limitations of the asserted claim reads on, that is, is found in, the accused device. *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 906 (1995). A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents only if every limitation in the claim is literally or equivalently present in the accused device or method. *Warner-Jenkinson Co., Inc.* , 520 U.S. at 18, 29 (1997).

There are several important legal limitations to the doctrine of equivalents. For example, the doctrine of equivalents must be applied to individual elements of the claim rather than to the invention as whole, and each element in a claim is deemed material to scope of patented invention. This "all elements" rule of the doctrine of equivalents requires that an alleged infringing device have an identical or equivalent element for each limitation contained in the claim of the alleged infringed patent. *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1327 (Fed. Cir. 1999); *Warner-Jenkinson Co., Inc.*, 520 U.S. at 18, 29.

An element in the accused product is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Warner-Jenkinson*, 520 U.S. at 39-40; *Hilton Davis Chemical, Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517-18 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997). The "function-way-result" test may help detect an equivalent, particularly for mechanical elements. *See Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998). The function-way-result test dictates that an element in the accused device is equivalent to the claim element if it "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950).

A further important limitation on the doctrine of equivalents is the doctrine of prosecution history estoppel, which provides that the patentee may not use the doctrine of equivalents to recover subject matter that has been surrendered. For example, a patentee may not argue that surrendered subject matter -- which is not literally infringed -- nonetheless infringes under the doctrine of equivalents. *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1363 (Fed. Cir. 2001). An estoppel may be found on the basis of arguments made

3

during prosecution of the patent application. When a court applies the doctrine of prosecution history estoppel to limit the scope of equivalents, a close examination must be made as to, not only what was surrendered, but also the reason for the surrender. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). *Allen Eng. Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1350 (Fed. Cir. 2002).

<u>Argument</u>

**The Accused Product Does Not Infringe Any Of The Claims Of The '766 Patent Because It Does Not Include A Duct With An Outlet Opening That Faces A Radiator Element Or Pressure Means.**

The accused product does not infringe any of the claims of the '766 patent because, among other reasons, it does not include a duct extending between an inlet opening and an outlet opening that faces a radiator element (as called for by independent claims 1, 9 and 23) or that faces a pressure means (as called for by independent claim 15). As explained below, this language, as a matter of law, requires a duct having an outlet opening opposite the structure of the radiator element or piston. Such structure is not at all present in the accused product, and, therefore, the accused product does not infringe any of the claims of the '766 patent.[1]

**I.      Claim Interpretation:   Independent Claims 1, 9, 15 and 23 Require A Duct Having An Opening Opposite The Structure Of the Radiator Element Or Piston**

In construing claims, the specification "is the single best guide to the meaning of a disputed term". *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004) (citations omitted). The Court's analysis must "remain centered on the claim language itself". *Id.* The Court must also examine the prosecution history to determine whether the patentee relinquished claim coverage by amendment or through argument to overcome or distinguish a reference. *Id.* at 1335.

In this case, independent claims 1, 9 and 23 each require a duct having an opening "facing" a "radiator element" and, claim 15 requires a duct having an opening "facing" a "pressure means". In particular:

---

[1] Since the accused product does not infringe any of the independent claims of the '766 patent, it does not infringe any of the dependent claims of the '766 patent and therefore does not infringe the '766 patent. "[I]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Manchak v. Chemical Waste Mgmt., Inc.*, 1999 U.S. App. LEXIS 32001 (Fed. Cir. 1999) quoting *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

- claim 1 calls for a "duct . . . extending between an inlet opening, and at least one outlet opening . . . *facing at least one radiator element*"

- claims 9 and 23 call for a "duct . . . extending between an inlet opening, and at least one outlet opening *facing at least one radiator element*"

- claim 15 calls for a "duct . . . extending between an inlet opening, and at least one outlet opening . . . *facing [a] pressure means*"

(DSOF, ¶¶ 8-11, italics added.) As a matter of law, based on the unambiguous import of the specification, the customary meaning of the claim language, and the prosecution history, the language italicized above means the duct must have an opening opposite the structure of the radiator element or the piston.[2]

### A.    The Specification Mandates That The Claim Language Means The Outlet Opening Is Opposite The Structure Of The Radiator Element Or Piston

"[T]he best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention". *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004). According to the Federal Circuit:

> It is the use of the words in the context of the written description and customarily by those skilled in the relevant art that accurately reflects both the "ordinary" and the "customary" meaning of the terms in the claims of a patent. *Ferguson Beauregard/Logic Controls, Division of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). (citations omitted)

The specification is always highly relevant to, if not dispositive of, the claim construction analysis. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If a patentee acts as its own lexicographer, it is bound by its lexicography. *Astrazeneca AB v, Mutual Pharm. Co.*, 2004 U.S. App. LEXIS 20545 (Fed. Cir. September 30, 2004). Moreover, the specification itself can disavow claim scope. *Id.*

Here, the specification of the '766 patent defines the term "facing" with clarity. The drawings of the '766 patent unequivocally show outlet openings 21 and 22 opposite the structure of the radiator elements. Set forth below are reproductions of FIGS. 1-4 of the '766 patent, together with Defendant's identifications of elements at issue:

---

[2] For purposes of this Motion only, Defendant submits that the claim language "pressure means" means "piston". In this regard, the '766 patent specification provides that "pressure means" includes the pistons and that the active ends of the pistons are called "radiator elements". (Ex. B, col. 2, lns. 33-35, 44-45, and 48-49; see also dependent claims 18-19). In light of the specification, it is believed that such a construction can not be disputed by Plaintiff.



(Ex. B) These drawings show the exact claim construction proffered herein by Defendant. No other construction is illustrated in these drawings.

The specification describes the outlet openings as being "disposed at the height of and facing the radiator elements 13a, 14a and 15a and the radiator elements 16a, 17a and 18a, respectively" (DSOF, ¶ 17). Even without the benefit of FIGS. 1-4, it is clear that this language means that the outlet opening is opposite the structure of the radiator elements. The specification even touts that:

> By virtue of the fact that the outlet openings reach into the immediate vicinity of the radiator elements which they face in close proximity, the cooling *is highly effective*. (DSOF, ¶ 19). (emphasis added).

6

There can be no reasonable interpretation of such disclosure other than to mean that the outlet openings are opposite the structure of the radiator elements or pistons.

The use of the '766 specification as a tool to interpret what Plaintiff meant by the word "facing" should not at all be confused with adding an extraneous limitation appearing in the specification, which would be improper. To the contrary, the '766 specification, by itself, compels the construction of "facing the radiator element" or "facing the piston" to mean opposite the structure of the radiator element or piston. *Astrazeneca AB* , 2004 U.S. App. LEXIS 20545.

Moreover, even assuming contrary to law that the meaning of the claim language could, in the abstract, be interpreted more broadly, it nonetheless must be construed to mean the only construction disclosed in the specification under the circumstances here. The law is clear that claim language should be interpreted to the only construction disclosed in a specification where there are specific reasons to do so.[3] Such specific reasons may be, for example, (1) where the specification limits the invention and where the patent applicant distinguished close prior art in the prosecution history, *Watts v. XL Sys., Inc.* 232 F.3d 877, 882-83 (Fed. Cir. 2000); (2) where there is express limiting definition in the specification, *Cultor Corp. v. A.E. Staley Mfg. Co.* 224 F.3d 1328, 1331 (Fed. Cir. 2000) and *Biogen, Inc. v. Berlex Labs, Inc.,* 318 F.3d 1132, 1139-40 (Fed. Cir. 2003); (3) where the patent applicant repeatedly distinguished their invention over the prior art by characterizing the invention narrowly, *Cultor, Id. at 1330*; and (4) where the specification, claims and prosecution history make clear the invention is limited to a single structure. *Toro Co. v. White Consol. Indus., Inc.* 199 F.3d 1295, 1301-02 (Fed. Cir. 1999) and *Gen Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996).

Here, there are ample reasons to interpret "facing" to mean the only disclosed construction because the specification not only illustrates and describes the direction of the outlet openings consistently throughout the application as pointing at the structure of the radiator element or piston, it does not even suggest any variation of this structure:

> This is not just the preferred embodiment of the invention; it is the *only* one described. Nothing in the claim language, specification, or drawings suggests ...[otherwise]. *General Am. Transp. Corp.*, 93 F.3d 766, 770 (Fed. Cir. 1996).

---

[3] To be clear, in this Motion, Defendant is not seeking to interpret the claims of the '766 patent to mean the only construction disclosed in the '766 specification. Rather, Defendant herein seeks only to interpret the specific claim language "facing the radiator element" or "facing the pressure means" to mean the only construction of that claim language disclosed in the '766 specification.

(Italics in original). See *Wang Lab., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999).

Furthermore, Plaintiff's clear intent to use the term "facing" to mean an outlet opening opposite the structure of the radiator element or piston is manifested not only in the specification, but also by the customary meaning of the claim language and the prosecution history. As explained below, the customary meaning of "facing" cannot be reasonably expanded to include a broader interpretation, and, as also explained below, the prosecution history is replete with arguments in which Plaintiff distinguished its invention from the prior art by distinguishing over prior art structure in which air is pointed at structure other than the piston. Under the circumstances, Plaintiff has demonstrated a clear disavowal of any interpretation other than the only construction described in the specification, i.e., "opposite the structure of the radiator element or piston".

In sum, as a matter of law, based on the unambiguous import of the specification, the claim language requires outlet openings to be opposite the structure of the radiator elements or pistons. As explained below, this legal conclusion is also supported by Plaintiff's own choice of claim language and its own arguments in the prosecution history.

**B.** **The Customary Meaning Of The Claim Language Mandates The Outlet Opening To Be Opposite The Structure Of The Radiator Element Or Piston**

The term "face" in the verb form means "to turn or be turned towards something physically; to be opposite". The term "facing" means "positioned with a front toward a certain direction; opposite". For purposes of this Motion, "pressure means" means "piston" (see footnote 2). Additionally, the term "radiator element" or "piston" is necessarily defined by a physical structure.

Accordingly, the customary meaning of the language "facing at least one radiator element" or "facing the pressure means" means "opposite the structure of the radiator element" or "opposite the structure of the piston" *Tex. Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1202 (Fed. Cir. 2002) (there is a "heavy presumption that [the claims] mean what they say"). This interpretation is not only supported by the specification, it is embodied in the only construction disclosed in the specification.

**C.    The Prosecution History Mandates That The Claim Language Means The Outlet Opening Is Opposite The Structure Of The Radiator Element Or Piston**

The Court also considers the prosecution history of a patent "to determine whether the applicant clearly and unambiguously disclaimed or disavowed [any interpretation] during prosecution in order to obtain claim allowance." *Middleton, Inc. v. 3M*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) (alteration in original). In fact, "the prior art cited and the applicant's acquiescence with regard to that prior art indicate the scope of the claims, or in other words, what the claims do not cover". *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367-1368 (Fed. Cir. 2004).

Here, the prosecution history and prior art also give little doubt as to the meaning of the claim language. For example, in pursuing allowance of claim 1, Plaintiff distinguished over a prior art patent cited by the Examiner, namely, U.S. Patent No. 4,440,270 to Ross (Ex. E), by making arguments such as the following:

- "the cooling chamber in Ross is specifically designed so as to direct the flow of air at the disk itself"; and

- "Ross teaches away from the claimed invention by expressly teaching that cooling air be directed at the disk brake instead of the connecting parts <u>between</u> the hydraulic piston and the friction pads...." (DSOF, ¶ 23) (emphasis added).

(In making these arguments, Plaintiff used the terms "disk" and "disk brake" to refer to the brake disk shown in the Ross patent.) In making such arguments, Plaintiff disclaimed any interpretation of the claim language "facing" other than what is disclosed in the specification and other than its customary meaning - opposite the structure of the radiator elements or piston.

In distinguishing over the prior art, Plaintiff went so far as to argue that, with its invention, the air cannot even be directed at an acute angle toward the disk brake. In particular, in making arguments to distinguish over the combination of the Ross patent and Great Britain Patent No. 2214581 to Brembo (Ex. F), Plaintiff assumed that the combined teachings of the prior art disclose a disk brake[4] housed in the chamber, pistons fitted with radiator elements and an air conduit which directs cooling air at an acute angle to the disk. This combination, according to Plaintiff, "categorically fails to grasp what the claimed invention recognizes". (DSOF, ¶ 24). By distinguishing over the prior art in this manner, Plaintiff disclaimed any interpretation of the

---

[4] As indicated above, Plaintiff used the term "disk brake" to refer to the brake disk.

language "facing" that does not require an outlet opening opposite the structure of the radiator element or piston. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 981 (Fed. Cir. 1999) (holding the scope of claim coverage has been relinquished based on an argument to distinguish prior art); *Lampi Corp. v. Am. Power Produs.*, 228 F.3d 1365, 1376 (Fed. Cir. 2000) (arguments made to overcome prior art can lead to narrow claim interpretations).

The prosecution history arguments by Plaintiff in reference to claim 1 apply with equal force to the meaning of the virtually identical language in independent claims 9, 15 and 23. That such arguments were made by Plaintiff in connection with claim 1, in a paper in which Plaintiff also amended claim 1 to include the language "in the immediate vicinity of and directly" facing the radiator element, does not limit applicability of these arguments to the other independent claims for at least four reasons.[5]

First, every claim requires the outlet openings to "face the radiator elements or pressure means", irrespective of the meaning of the phrase "immediate vicinity of and directly". Plaintiff's arguments distinguishing over the prior art are based on Plaintiff's characterization of the prior art as directing air toward the brake disk. In those arguments, Plaintiff was comparing the direction of the air from the outlet opening of the prior art with the direction of the air of the claimed invention. The direction of the air of the claimed invention is dictated by the word "facing" and not qualified by the language "in the immediate vicinity of and directly" facing in that the direction of the air does not vary with the inclusion of such additional language. The outlet opening must face the radiator element or pressure means regardless of whether it is also in the "immediate vicinity of and directly" facing the claimed structure.

Second, the language "immediate vicinity of and directly" relates to the proximity of the outlet opening and not to the direction in which the claimed outlet opening faces. Whether or not the outlet opening is located physically next to the radiator element or piston, the air must be directed at the structure of the radiator element or piston. Moreover, the Federal Circuit does not in any event prohibit construing slightly different claim terms to have the same meaning:

> While we have often explained that we presume that there is a difference in
> meaning and scope when different words or phrases are used in separate claims,

---

[5] Claim 15, of course, includes the very same language of claim 1 except that it substitutes "pressure means" for "at least one radiator element". The phrase "pressure means" includes the radiator elements (see, *e.g.*, dependent claims 18 and 19) and also the specification provides that pressure means include pistons, whose active ends are called "radiator elements". (Ex. B, col. 2, lns. 33-35, 44-45, and 48-49). Thus, no argument can be made by the Plaintiff as to the applicability of the prosecution history arguments as to claim 15.

the rule is not inflexible. [W]hile interpretations that render some portion of the claim language superfluous are disfavored, where neither the plain meaning nor the patent itself commands a difference in scope between two terms, they may be construed identically.

*Power Mosfet Techs. v. Siemens Ag*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) (citations omitted) (finding that the absence of the term "directly" in some of the independent claims did not affect the claim construction that required direct physical contact). *Id.*

Third, in arguing that Ross teaches away from the claimed invention by expressly teaching that cooling air be directed at the disk brake instead of at the connecting parts, Plaintiff acknowledged that the patented subject matter excludes outlet openings that do not point at the radiator elements. By such arguments, Plaintiff makes clear that the claims do not cover outlet openings that direct air at the brake disk. *Elkay Mfg. Co.*, 192 F.3d 973; *Lampi Corp.*, 228 F.3d at 1376.

Fourth, by making these arguments, Plaintiff has placed a reasonable competitor on notice of the scope of Plaintiff's patent. A competitor that reviews the '766 patent and its prosecution history must be able to reasonably conclude that the patent requires an outlet opening that is opposite the structure of the radiator element or piston. A reasonable competitor relying on assertions by the patentee that the patented device that directs air directly at the disk brake rather than at the connecting parts between the hydraulic piston and the friction pads teaches away from the claimed invention, should be able to conclude that a device that directs air toward the brake disk instead of at the connecting parts between the hydraulic piston and the friction pads does not infringe Plaintiff's patent. Similarly, where it is argued during prosecution that a device that directs air at an acute angle relative to the disk brake categorically fails to grasp what the claimed invention teaches, a reasonable competitor should be able to rely on a patentee's representations that a device that directs air at or at an acute angle relative to the brake disk does not infringe the patent. *Southwall Techs., Inc.*, 54 F.3d at 1578 (competitors must be able to rely on the definition of a claim term given in a prosecution history in order to understand what constitutes infringement); *Lifestream Diagnostics, Inc. v. Polymer Tech. Systems, Inc.*, 2004 U.S. App. LEXIS 18060 (Fed. Cir. 2004) (unpublished) (citing *Spring Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and the meaning of the

claims, and competitors are entitled to rely on those representations"); *see also Elkay Mfg. Co.*, 192 F.3d 973.

Accordingly, based on the prosecution history, the claims must be interpreted to require a duct having an outlet opening opposite the structure of the radiator element or the piston. Such interpretation is not only supported by the specification, it is also embodied in the only construction disclosed in the specification.

## II. Claim Comparison: The Accused Product Does Not Include A Duct Having An Outlet Opening Opposite The Structure Of the Radiator Element Or Piston

With the accused product, air is exhausted in two manners: (1) through two pairs of chimneys, each chimney of which extends internally through and coaxially to an open-ended piston and has an opening that points at one of the brake pads; and (2) through angled channels pointed at one of the brake pads. Inasmuch as neither the chimneys nor angled channels point at the structure of the radiator element or piston, there can be no infringement.

### A.     There Is No Literal Infringement

The accused product does not literally infringe any of the claims of the '766 patent because, among other reasons, it does not include a duct having an outlet opening opposite the structure of the radiator element or piston. The accused product includes chimneys and angled channels with openings that point at the brake pads. The openings of the chimneys and angled channels are not opposite any structure whatsoever of the radiator element or piston. (DSOF, ¶¶ 28-35).

The chimney openings fall outside the scope of the claims because they point at the brake pads. The chimney openings do not point at any radiator element or piston structure because the chimneys extend internally of and co-axially through the open-ended pistons. They point air at the brake pads. They plainly are not opposite the structure of the radiator elements or piston. *Id.*

The openings of the angled channels also point at the brake pads. The channels do not at all point towards any radiator elements or piston structure. The angled channels point air at the brake pad. The openings of the angled channels plainly are not opposite the structure of the radiator elements or piston. *Id.*

Accordingly, because neither the chimney openings nor the angled channel openings are opposite the structure of any radiator element or piston, there is no literal infringement.

**B.    There Is No Infringement Under The Doctrine Of Equivalents**

The accused product cannot infringe under the doctrine of equivalents for two separate reasons: First, the accused product does not function in the same way or achieve the same result as the patented invention. Second, application of the doctrine of equivalents is barred by prosecution history estoppel in view of the arguments made by Plaintiff to distinguish its invention from the prior art.

**1.    The Accused Product Functions In A Substantially Different Manner And Obtains A Substantially Different Result**

The accused product and the patented invention function in substantially different ways and obtain substantially different results. With the accused product, the air is pointed at the brake pads by the chimneys and the angled channels. With the patented invention, on the other hand, the air is pointed at the structure of the radiator element or piston.

According to the '766 specification, the patented invention includes openings that point at the radiator elements or the pistons and that point air at the radiator elements or pistons. (See, e.g., Ex. B). The air is not pointed at the brake disk or the brake pads. The accused product functions substantially differently because the chimneys and angled channels do not point at the radiator element or piston, rather they point at the brake pads. (DSOF, ¶¶ 28-37). Since the accused product points air at the brake pads, it clearly operates in a different manner and obtains a different result.

Moreover, with the chimneys of the accused product, the air travels inside the piston before it is directed at the brake pads in parallel to the piston. In particular, air travels through chimneys that extend internally of and coaxially to the piston before it is pointed at the brake pad. (DSOF, ¶¶ 36-37). With the patented device, on the other hand, the air instead is exhausted from outside of the piston at the radiator element. (DSOF, ¶¶ 17-19).

That the air may deflect after it is exhausted, as in the case of Ross and other prior art structures, does not change the fact that the air is pointed at the brake pads. (DSOF, ¶¶ 34-37). With the patented invention, the air quite obviously also deflects after it is exhausted. With the accused product, however, the air is pointed at the brake pads when it is exhausted (DSOF, ¶¶ 34-37); whereas, with the patented invention, the exhausted air is pointed at the radiator elements or the piston when it is exhausted. (DSOF, ¶¶ 17-19). Thus, in light of the substantial differences

in the manners which the accused product and patented invention function, they obtain substantially different results.

Accordingly, the accused product functions in a substantially different manner and obtains a substantially different result than the patented invention, and therefore it does not infringe any of the independent claims 1, 9, 15 and 23 by equivalents.

**2.    Prosecution History Estoppel Bars The
<u>Application Of The Doctrine Of Equivalents</u>**

Arguments made during the prosecution of a patent regarding the scope of the prior art are binding upon the patentee. A patentee cannot characterize the prior art one way in obtaining the patent and then use the doctrine of equivalents to expand the scope of the patent to cover an accused product that includes the same prior art characteristics relied upon in distinguishing over the prior art. The limits imposed by prosecution history estoppel on the permissible range of equivalents can be, and frequently are, broader than the prior art. *Southwall Techs., Inc.*, 54 F.3d at 1578; *Wang Lab., Inc.*, 197 F.3d at 1383; *see Haynes Int'l Inc. v. Jesspo Steel Co.*, 8 F.3d 1573, 1579 (Fed Cir. 1993).

In this case, Plaintiff distinguished over the prior art by characterizing the prior art as directing air in the same direction as the accused product. As a result, Plaintiff is estopped from arguing that this structure falls within the scope of its patent. *Southwall Techs., Inc.*, 54 F.3d at 1580.

In particular, during the prosecution of the '766 application, Plaintiff argued that its invention is patentable over Ross because Ross directs air at the brake disk. (DSOF, ¶¶ 23-24). Fig. 4 of Ross shows air directed at the brake disk, which, according to Plaintiff, teaches away from the claimed invention. *Id.* Fig. 6 of Ross shows air directed at the brake disk at an angle, which, according to Plaintiff, categorically fails to grasp what the claimed invention recognizes. *Id.*

With the accused product, the openings of chimneys and angled channels point toward the brake disk as in the case of Figs. 4 and 6. (DSOF, ¶¶ 34-37; Ex. E). The chimneys point air in the same direction as shown in Fig. 4 of Ross, and the angled channels point air toward the brake disk at an angle as shown in Fig. 6 of Ross. *Id.* Plaintiff therefore is estopped from arguing that an accused product that includes such structure infringes under the doctrine of equivalents. *Southwall Techs., Inc.*, 54 F.3d at 1580.

14

Prosecution history estoppel applies with equal force to all of the independent claims because all of the independent claims include the term "facing". *Id.* (once an argument is made regarding a claim term so as to create an estoppel, the estoppel applies to that term in other claims); *Wang Lab., Inc.*, 197 F.3d at 1383. Here, even though the arguments were made in connection with claim 1, in a paper in which Plaintiff also amended claim 1 to include the language "in the immediate vicinity of and directly" facing the radiator element, the arguments are not limited to that language. The arguments apply to the term "facing" regardless of the meaning of "in the immediate vicinity of and directly" because, among other reasons, the issue in distinguishing over the prior art was the direction of the air relative to the piston of the prior art as compared to the direction of the air relative to the radiator element or piston of the claimed invention. The direction of the air is dictated by the word "facing" irrespective of the meaning of "in the immediate vicinity and directly". An outlet opening facing the radiator element blows air in the direction of the radiator element irrespective of whether the outlet opening is in the immediate vicinity of and directly facing the radiator element.[6]

### Conclusion

As indicated above, the accused product does not infringe any of independent claims 1, 9, 15 and 23. Since the independent claims are not infringed, the dependent claims are not infringed. Accordingly, Defendant is entitled to summary judgment of non-infringement of U.S. Patent No. 6,446,766.

Date: October 25, 2004

Respectfully Submitted,

Defendants Alcon Components, Ltd. and Alcon Components (USA) Inc.

Thomas J. Donovan
Vladimir Khodosh
BARNES & THORNBURG LLP
One North Wacker, Suite 4400
Chicago, Illinois 60606
(312) 214-8329
Attorneys for Defendants

CHDS01 TJD 240650v1

---

[6] The arguments made in section **I.B.** also apply here with respect to the applicability of prosecution history estoppel. *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222 (Fed. Cir., 1996) (prosecution history is relevant not only for purposes of prosecution history estoppel but also for construing the meaning and scope of the claims).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following:

William H. Frankel, Esq.
Michael P. Chu, Esq.
Amanda M. Church, Esq.
Brinks, Hofer, Gilson & Lione
3600 NBC Tower
455 N. Cityfront Plaza Drive
Chicago IL 60611-5599

via hand delivery this 25th day of October, 2004.